UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MURAD WILLIAMS,  No. 07-15376

    Petitioner,  District Judge Arthur J. Tarnow

v.  Magistrate Judge R. Steven Whalen

THOMAS BIRKETT,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

    Petitioner Murad Williams has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.  The matter has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons that follow, I recommend that the Petition be GRANTED and that a conditional writ of habeas corpus issue.   I further recommend that any further state court proceedings be conducted by a different judge.[1]

### I.   PROCEDURAL HISTORY

    On November 5, 2003, Petitioner pled guilty in the Circuit Court for Wayne County, Michigan, the Honorable Maggie Drake, presiding, to a single charge of unarmed robbery, M.C.L. § 750.530.  On March 12, 2004, he was sentenced to probation under the Holmes Youthful Trainee Act ("HYTA"), M.C.L. § 762.11, *et seq*., with the condition that he serve 90 to 120 days in a boot camp program.

    On May 3, 2004, Petitioner was brought back to court for resentencing, based on an apparent violation of the terms of the boot camp program (Tr. 5-3-04, 3).  Judge Drake

---

[1] I construe Petitioner's "Motion for Default Judgment" [Docket #19] as a reply brief.  To that extent, that motion should be denied as moot.

revoked his probation and sentenced him to a prison term of 1 to 15 years. *Id.*, 18.

On November 28, 2005, Petitioner, through counsel, filed a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules, arguing that (1) Petitioner was denied due process where he was not provided with written notice of the claimed violations of probation or other rights set forth by the Supreme Court in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); and (2) he was denied his Sixth Amendment right to the effective assistance of counsel at the resentencing/violation hearing. On January 23, 2006, Judge Drake denied the motion. On August 2, 2006, the Michigan Court of Appeals denied leave to appeal. *People v. Murad Williams*, C.A. Docket No. 268119. On December 13, 2006, the Michigan Supreme Court denied leave to appeal, with Justice Kelly writing that she would remand for resentencing. *People v. Murad Williams*, 477 Mich. 968, 724 N.W.2d 468 (2006).[2]

Petitioner raises the following issues in this Court:

I. PETITIONER'S MINIMUM DUE PROCESS RIGHTS WERE VIOLATED WHEN HE WAS BROUGHT BACK FROM BOOT CAMP AFTER AN ALLEGATION THAT HE VIOLATED THE CONDITIONS OF BOOT CAMP AND WAS RE-SENTENCED TO PRISON, WITHOUT BEING GIVEN WRITTEN NOTICE OF THE ALLEGATIONS, AND WITHOUT BEING INFORMED BY THE COURT OF HIS RIGHT TO A PROBATION VIOLATION HEARING, AND RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES AGAINST HIM.

II. PETITIONER'S SIXTH AND FOURTEENTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF

---

[2] While the appeal of the denial of his motion for relief from judgment was pending, the Petitioner filed a second motion in the trial court. Because this second motion tolled the statute of limitations under 28 U.S.C. § 2244(d)(2), this Court denied Respondent's motion to dismiss. *See* Docket #14. In terms of substantive issues, however, only the two raised in the first motion for relief from judgment are before this Court. Although Respondent raises a defense of procedural default, he concedes that these issues have been exhausted. *Respondent's Answer*, p.2 [Docket #16].

COUNSEL WAS VIOLATED BECAUSE COUNSEL DID NOT INFORM DEFENDANT OF HIS RIGHT TO A VIOLATION HEARING AND RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES.

## II.   FACTS

Petitioner pled guilty to the charge of armed robber on November 5, 2003. Providing a factual basis for the plea, Petitioner said that he "jumped out of a vehicle, walked up to a gentleman, punched him in the stomach, [and] took $10." (Tr. 11-5-03,26). The Petitioner was 18 years old at the time of his plea, and had not finished high school. *Id.*, 28. His mother told Judge Drake that he suffered from ADHD, and had been in special education classes since the first grade. *Id.*, 29-30.

At sentencing, Petitioner's counsel characterized him as a "special needs individual." (Tr. 3-12-04, 4-5). The judge told the Petitioner, "I can tell you to your face, I don't like your attitude." *Id.*, 5.[3] Nevertheless, she sentenced the Petitioner to probation under HYTA, with the condition that he serve 90 to 120 days in a boot camp program. The judge stated, "If he quits or does not fulfill the requirements of Boot Camp then I am going to send him to prison. He is going anyway with that attitude." *Id.*

On May 3, 2004, Petitioner appeared with counsel before Judge Drake. The transcript of the proceeding is captioned "Resentence." When the judge asked why the boot camp returned the Petitioner, Petitioner's counsel stated:

> "He violated the terms, Your Honor. For the record, Cliff Woodards for my client, Murad Williams. He violated, what it says, phase one of the program. I think he had a little respect issue, talking back, those types of things. and my client informs me that he failed to pretty much listen to them." (Tr. 5-3-04, 3).

Counsel proceeded to argue in mitigation of sentence. *Id.*, 4-5. Judge Drake then

---

[3] Judge Margie Braxton presided at the sentencing.

questioned the Petitioner as follows:

> THE COURT: You were given boot camp and placed on HYTA.
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: And you refused to adhere to the terms and conditions of the HYTA probation and the boot camp, is that it?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: What happened there, Mr. Williams? Tell me what happened. What happened when you went to boot camp?
>
> DEFENDANT: *Ma'am, I did everything they told me to do*, but- -
>
> THE COURT: But.
>
> DEFENDANT: Ma'am, but- -
>
> THE COURT: I didn't hear you.
>
> DEFENDANT: I guess it was too hard for me, ma'am.
>
> THE COURT: How old are you?
>
> DEFENDANT: Ma'am, 18.
>
> THE COURT: What was too hard for you?
>
> DEFENDANT: (No response).
>
> THE COURT: What was too hard for you?
>
> DEFENDANT: Ma'am, all the cursing and yelling and stuff like that.
>
> THE COURT: Wait a minute, wait a minute, wait, wait. You struck someone in the stomach and took money from them, and you cursed at the time you did it. Do you remember that?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: So what was so different at boot camp? You don't like- -you can dish it out, but you can't take it, is that it?
>
> DEFENDANT: Yes, ma'am.

> THE COURT: It was too hard for you to do physical exercise. You know, you are a big, tall, strong man, but you can't do that.
>
> DEFENDANT: *No, ma'am. Ma'am, I did all the exercises, ma'am.*
>
> THE COURT: What didn't you do?
>
> DEFENDANT: Ma'am, listen, ma'am.
>
> THE COURT: You didn't listen, ma'am.
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you have a hearing problem?
>
> DEFENDANT: No, ma'am. *Id.*, 7-9. (Emphasis added).

Petitioner's family members and members of his church spoke on his behalf, offering counseling and employment if he were continued on probation. *Id.*, 9-17. Nevertheless, stating that Petitioner "failed to comply with the terms and conditions of probation," and that Petitioner "violated his conditions of boot camp [and] was returned to this Court for sentence," Judge Drake imposed a sentence of 1 to 15 years. *Id.*, 18.

At the hearing on Petitioner's post-conviction motion on January 23, 2006, the judge remarked, for the first time, that probation was revoked because Petitioner "got involved in threatening workers at the boot camp" or "got involved in some type of altercation at the boot camp." (Tr. 1-23-06, 6, 8). The judge also stated that because Petitioner had been given warnings at the original sentencing, he was not entitled to a subsequent probation violation hearing. *Id.*, 8-9.

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state court decisions. Specifically, 28 U.S.C. §2254(d) provides:

> "(d) An application for a writ of habeas corpus on behalf of a

> person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim - -
>
> a. resulted in a decision that was contrary to, or involved in unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> b. resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In *Williams* v *Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that in order to justify a grant of habeas corpus relief under the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams*, 529 U.S. at 412. Under subsection (d), habeas relief may not be granted unless (1) the state court decision was contrary to established federal law, or (2) the state court decision involved an unreasonable application of clearly established federal law. *Williams* held that a state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this court has on a set of materially indistinguishable facts." *Id* at 413. *Williams* further held that a state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Id*. In *Brown v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005), the Supreme Court stated that a "state court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's

precedents to the facts in an objectively unreasonable manner."

*Williams* also made it clear that under the "unreasonable application" clause of §2254(d), it is not necessary that the controlling Supreme Court case be factually on all fours with the case under review. Instead, *Williams* held that "a state-court decision...involves an unreasonable application of this Court's precedent if the state court...unreasonably refuses to extend that principle to a new context where it should apply." *Id.*, 529 U.S. at 412.

## IV.   ANALYSIS

### A.   Procedural Default

Citing *Gagnon v. Scarpelli, supra*, and *Morrisey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 2d 484 (1972), Petitioner argues that he was not afforded minimum due process rights before his probation was revoked and he was sentenced to a prison term. In response, the Respondent does not affirmatively argue that the procedures were in compliance with *Gagnon*, but rather that the issue has been procedurally defaulted because no objection was interposed at or before the May 3, 2004 resentencing.[4]

In *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme described the doctrine of procedural default as follows:

> "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrates that failure to consider the claim will result in a fundamental miscarriage of justice."

---

[4] Procedural default is an affirmative defense that the State may waive by failing to assert it. *See Baze v. Parker,* 371 F.3d 310, 320 (6th Cir.2004). Here, the Respondent raises procedural default only in relation to Petitioner's failure to object at the May 3, 2004 hearing. Any other potential claim of default–for example, the failure to take a timely appeal by leave after the May 3rd hearing, instead proceeding under subchapter 6.500–is waived.

Procedural default may occur if Petitioner has not asserted a timely objection at trial. *Paprocki v. Foltz,* 869 F.2d 281, 284-85 (6th Cir.1989); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000). Michigan has a contemporaneous objection rule. *See People v. Grant*, 445 Mich. 535, 546, 520 N.W.2d 123 (1994).

Again, a prisoner seeking habeas review of a procedurally defaulted issue must satisfy the *Coleman* cause and prejudice test. In *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court held that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Ineffective assistance of counsel can constitute "cause." *Id*. In assessing whether a claim of ineffective assistance satisfies the "cause" requirement of *Coleman*, however, the court applies a less stringent standard of review than it would to a substantive counsel ineffectiveness issue under the AEDPA. The question is not whether the state court's decision was unreasonable, but whether there was there was an independent Sixth Amendment violation under *Strickland*. The level of scrutiny, in other words, would be the same as would be applied on direct review. *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006); *Fischetti v. Johnson,* 384 F.3d 140, 154-55 (3d Cir.2004).

Likewise, to establish prejudice under *Coleman*, a petitioner advancing an ineffective assistance claim must make the same showing required to establish that the ineffective assistance itself was prejudicial under *Strickland* v. *Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Joseph v. Coyle*, 469 F.3d at 462-63 ("[I]t follows that establishing *Strickland* prejudice likewise establishes prejudice for purposes of cause and prejudice").

*Strickland* sets forth a two-part test for assessing claims of ineffective assistance.

First, did the attorney make errors "so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment," *Id.*, 466 U.S. at 687. To establish deficient performance under this prong of *Strickland*, the defendant must show that his attorney's representation "fell below an objective standard of reasonableness." *Id.*, at 688. The second prong of *Strickland* examines whether the defendant was prejudiced by counsel's deficient performance. To meet the prejudice standard, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### 1.     Counsel's Performance was Objectively Unreasonable

At the May 3, 2004 hearing, Petitioner's counsel was representing an 18-year-old individual with a learning disability, who had been a special education student since the first grade. Counsel had been told at the original sentencing that if Petitioner failed to comply with the requirements of probation, he was going to be sent to prison, no questions asked. *See* Tr. 3-12-04, 10. Yet, counsel proceeded with a resentencing without a written notice of the allegations, without assuring that Petitioner was made aware that he had a right to a hearing, without eliciting a knowing and voluntary waiver of that right from the Petitioner, without ensuring that there was clear evidentiary support for the alleged violation, and without obtaining a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. Indeed, it does not appear from this record that counsel even knew that Petitioner had these rights.

In *Gagnon v. Scarpelli, supra*, the Supreme Court held that a probationer who faces revocation of probation is entitled to the same due process guarantees that are

afforded an alleged parole violator under *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). These "minimum requirements of due process" are (a) written notice of the claimed violations of probation, (b) disclosure to the probationer of the evidence against him, (c) an opportunity to be heard in person and to present witnesses and documentary evidence, (d) the right to confront and cross-examine adverse witnesses unless there is good cause to disallow confrontation, (e) a neutral and detached hearing body and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. *Gagnon*, 411 U.S. at 786.

Of course, a probationer may waive his or her right to a violation hearing and admit the alleged violations. However, there is no statement on this record that the Petitioner himself knowingly or voluntarily waived his due process rights, or that he or his attorney even knew that he had those rights. Counsel, in fact, proceeded as though the violation were a *fait accompli*[5], and simply proceeded with sentencing arguments. A waiver of constitutional rights cannot be presumed from a silent record. Instead, "courts indulge every reasonable presumption against waiver of fundamental constitutional rights and ... require a showing of an intentional relinquishment or abandonment of a known right or privilege." *United States v. Lee,* 539 F.2d 606, 609-610 (6th Cir. 1976) (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)) (quotations omitted). The rule against silent or implied waivers applies to the due process rights in probation or parole violation hearings. *See Preston v. Piggman,* 496 F.2d 270, 274 (6th Cir.1974), where the Sixth Circuit, relying on *Morrissey v. Brewer*, stated:

> "The responsibility rests with the Parole Board to conduct a proper hearing no matter how informal, which meets the basic requirements of due process.... A waiver of a constitutional right, particularly one involving

---

[5] This if French for "a done deal."

individual liberty, must be knowingly and intelligently given. In the present case there is no indication in the record that appellant was advised by the Board of his right to present mitigating evidence; nor is there any indication of a specific waiver. Certainly a waiver cannot be presumed from a silent record." (Internal citations omitted).

A similar situation was presented in *Commonwealth v. Heilman*, 876 A.2d 1021 (Pa. 2005). In that case, the defendant was alleged to have violated the terms of his probation when he was terminated from a sexual offenders' treatment program. The judge told the defendant, "You're entitled to a Gagnon I or Gagnon II.[6] What do you want to do." *Id.* at 1024. However, rather than responding to this question, defendant's counsel began questioning his client about the circumstances of his termination from the treatment program. Ultimately, the judge revoked probation and sentenced the defendant. Holding that the waiver of a *Gagnon II* hearing could not be inferred from the defendant's failure to respond to the judge's question, the court held:

> "However, 'for this Court to uphold such a waiver [of a constitutional right], the record must clearly demonstrate an informed relinquishment of a known right.' The record here reveals no such informed waiver. Appellant's silence following the court's comment that he is entitled to a *Gagnon I* or *Gagnon II* hearing does not constitute a waiver of his right to such a hearing. Clearly, a tacit or implied waiver of a constitutional right is simply insufficient." *Heilman*, 876 A.2d at 1027.

Of further concern is the fact that there was no written notice of the precise violation charges, as required by *Gagnon*. While counsel and the judge apparently assumed that Petitioner had violated some condition of the boot camp, it is unclear precisely what, if anything, the Petitioner did that resulted in the boot camp sending him

---

[6] *Gagnon* provides for two hearings. The preliminary is to determine whether there is probable cause to believe that the probationer committed the violation (Gagnon I), and the second, more comprehensive hearing is held to determine (1) whether the probationer in fact violated a condition or conditions of probation, and, if so, whether the probation should be revoked. *Id.*, 411 U.S. at 782, 784. In the federal system, this procedure is codified in Fed.R.Crim.P. 32.1.

back to court. Petitioner's counsel alluded to some vague "respect" issue. The Petitioner's statements at the hearing, in response to Judge Drake's questioning, were even more ambiguous. While he said that boot camp was "too hard" for him, and that he did not like the cursing and yelling, he otherwise affirmed that he followed all of the rules and performed all of the physical exercises demanded of him. He told the judge, "Ma'am, I did everything they told me to do," and when the judge berated him for essentially being too lazy or stubborn to do the physical exercises, he said, "No, ma'am. Ma'am, I did all the exercises, ma'am." (Tr. 5-3-04, 7-9).

The purpose of written notice of the alleged violations is "to inform [the probationer] of what evidence the government will be relying on in attempting to revoke his status." *Spencer v. United States*, 142 F.3d 436, *3, 1998 WL 165142 (Table)(6th Cir. 1998), citing *United States v. Kirtley*, 5 F.3d 110, 1112-14 (7th Cir. 1993). Petitioner's counsel simply proceeded on the *assumption* that his client's attitude was the problem. At the hearing, the judge wasn't sure what the problem was, suggesting at one point that the Petitioner had refused to do his exercises. And the Petitioner himself, although answering "yes" to the judge's question of whether he violated the terms of his probation, went on to say that although boot camp was difficult, he followed the rules.

Even more troubling–and underscoring the necessity of written notice–are the judge's comments at the post-conviction hearing on January 23, 2006, where the judge stated that the Petitioner "was resentenced because he quit boot camp and got involved in threatening workers at the boot camp." (Tr. 1-23-06, 6). The judge went on to say, "He got involved in some type of altercation at the boot camp." These allegations were never brought out at the May 3, 2004 hearing, and neither Petitioner nor his attorney ever admitted to those charges. It thus appears that probation was revoked and Petitioner was

sentenced to prison based on charges of which he never had notice or opportunity to respond.

Nor did the judge comply with *Gagnon's* requirement that there be a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. In a general sense, and setting aside her post-hearing statements that the Petitioner was somehow involved in an "altercation," the judge appeared to base her revocation of Petitioner's probation on his alleged non-compliance with the terms of the boot camp program, but again, made no specific findings at the May 3rd hearing as to *how* he was non-compliant. The judge seemed more fixated on keeping her "promise" that she would send the Petitioner to prison if he did not complete the program. In fact, at the January 23, 2006 hearing on the post-conviction motion, Judge Drake, apparently not aware of the Supreme Court's decision in *Gagnon v. Scarpelli*, stated that because the Petitioner had been told at the original sentencing that a violation would subject him to a prison sentence, he was not even entitled to a revocation hearing:

> " He got involved in some type of altercation at the boot camp. *He was not entitled to another hearing*. He had been given notice at the time I entered the boot camp order. The terms and conditions of boot camp were that if he violates or if he does not complete boot camp, he was going to prison.
>
> "The Court sent him to boot camp to try and keep him out of prison. *He had been given everything that he was entitled plus some more.* So I don't know what it is you think the Court was supposed to have done with your client, counsel, so you should tell me what it is." (Tr. 1-23-06, 8-9).

In view of the glaring deficiencies in the way the revocation proceedings were conducted (or more accurately, not conducted), counsel's failure to demand a written notice of specific violations or to ensure that his client was afforded even minimal due process cannot be considered objectively reasonable. Petitioner has therefore satisfied the first prong of *Strickland*.

### 2.     **Prejudice**

Respondent argues that Petitioner is unable to show prejudice because, viewing the issue in the context of a plea, Petitioner is unable to show "that, but for counsel's errors, he would not have pleaded guilty and would have insisted on" going forward with the hearing. *Response*, Docket #16, p.7, quoting *Tinsley v. Million*, 399 F.3d 796, 802 (6th Cir. 2005). Respondent also argues that Petitioner cannot show what witnesses or evidence he would have offered if he had been given a hearing. These arguments, however, presume that there was an implicit waiver of the hearing and a valid plea to the alleged probation violation, which, as discussed above, there was not. Nor was there any proceeding that was in compliance minimum due process standards. Instead, as a result of counsel's ineffectiveness, the Petitioner's probation was revoked without notice of the charges he had to defend against, with (at best) an ambiguous evidentiary record that could just as well support a finding that there was no violation, with a resultant uninformed and apparently predetermined decision to revoke probation, and with none of the essential due process rights that the Supreme Court spelled out in *Gagnon* and *Morrissey*. It is still not clear what the specific violation was. How is the Petitioner in any better position to proffer a proposed defense now than he was on May 3, 2004? In effect, the judge, with counsel's complicity, essentially bypassed the due process requirements of *Gagnon* and went straight to sentencing.[7]

In *Gagnon*, the Supreme Court observed that the due process requirements attendant to probation violation proceedings "in themselves serve as substantial protection against ill-considered revocation...." *Id.*, 411 U.S. at 786. The Court further explained:

"Both the probationer or parolee and the State have interests in *the accurate*

---

[7] It is perhaps for this reason that Justice Kelly voted for at least a resentencing.

> *finding of fact and the informed use of discretion*–the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community." *Id.* at 784. (Emphasis added).

Therefore, rather than viewing the *Strickland* prejudice analysis under a plea/waiver paradigm, the focus should be on the reliability of Judge Drake's revocation decision. In this regard, it would be instructive to quote the entire portion of *Tinsley v. Million*, a case cited by the Respondent:

> "In satisfying the second requirement-prejudice-the petitioner must demonstrate a 'reasonable probability' that the result of the trial would have been different but for counsel's mistakes. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. *A 'reasonable probability' is a probability 'sufficient to undermine confidence in the outcome*,' *id.,* but something less than a showing that the outcome more likely than not would have been different, *id.* at 693, 104 S.Ct. 2052. While the claimant need not conclusively demonstrate his 'actual innocence,' *compare Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (requiring petitioner to establish more likely than not that no reasonable juror would have convicted him), *with Strickland,* 466 U.S. at 693, 104 S.Ct. 2052 ('we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case'), *the focus should be on whether the result of the trial was 'fundamentally unfair or unreliable*,' *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)." (Emphasis added).

For the reasons set forth above, the result of these proceedings was "fundamentally unfair or unreliable," and there can be no confidence in the integrity of the judge's decision to revoke probation.

Therefore, Petitioner has met both prongs of *Strickland*, and perforce both the cause and prejudice prongs of *Coleman v. Thompson*. The claimed procedural default may therefore be excused, and this Court may proceed to the merits of the claim.

### B. Petitioner was Denied Due Process

Choosing to rely on the defense of procedural default, Respondent has offered no substantive rebuttal of the Petitioner's claim that under *Gagnon*, he was denied the

-15-

minimum requirements of due process when his probation was revoked. Indeed, the Respondent does not even cite *Gagnon* or *Morrissey*. However, the record shows that the judge not only unreasonably applied *Gagnon*, but was not even aware that it existed, opining that Petitioner got all the process he was due when he was told at his original sentencing that a violation of probation would result in a prison sentence. (Tr. 1-23-06, 8-9). For the reasons discussed in Section (A)(1), *supra*, the state court decision was based on an unreasonable application of the Supreme Court's opinions in *Gagnon v. Scarpelli* and *Morrissey v. Brewer, supra*, *and* was contrary to those decisions. A conditional writ of habeas corpus should therefore issue.

### C. Petitioner was Denied the Effective Assistance of Counsel

Petitioner has also raised an independent counsel ineffectiveness claim under the Sixth Amendment and *Strickland v. Washington*. Although Petitioner has shown ineffective assistance sufficient to excuse procedural default under *Coleman v. Thompson*, the standard of review for a stand-alone claim under the AEDPA is more stringent. *Joseph v. Coyle, supra*. However, the facts and arguments discussed above in Section A are sufficient to satisfy that standard, and I find that the state court decision was an unreasonable application of the Supreme Court's decision in *Strickland v. Washington*.

Finally, it is troubling that the trial judge predetermined the outcome of the proceedings in favor of revocation, without recognizing that Petitioner had a right to a hearing, and without regard to any mitigating circumstances or any showing that the safety of the community could be assured while at the same time providing the Petitioner a successful opportunity for rehabilitation. Among the due process rights established by *Gagnon* and *Morrissey* is the right to "a neutral and detached hearing body." *Gagnon*,

411 U.S. at 786. This judge has proved herself incapable of affording the Petitioner that right. Therefore, I recommend that the writ include a directive that any further proceedings in state court be conducted by a different judge.

## V. CONCLUSION

For these reasons, I recommend that a conditional writ of habeas corpus be GRANTED. I further recommend that if state court proceedings consistent with this Report and Recommendation are not commenced within 90 days of the issuance of a conditional writ, Petitioner be unconditionally released. I further recommend that any further proceedings in state court be conducted by a different judge.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained

within the objections.

                                       s/R. Steven Whalen
                                       R. STEVEN WHALEN
                                       UNITED STATES MAGISTRATE JUDGE

Dated:  August 25, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 25, 2009.

                                       s/Susan Jefferson
                                       Case Manager